**UNITED STATES of America**

v.

**W. Herbert HOOVER, Appellant.**

**No. 11751.**

United States Court of Appeals Third Circuit.

Argued Jan. 13, 1956.

Decided May 29, 1956.

Jacob Kossman, Philadelphia, Pa. (James W. Nelson, Altoona, Pa., on the brief), for appellant.

Leonard J. Paletta, Asst. U. S. Atty., Pittsburgh, Pa. (D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Appellant, W. Herbert Hoover, was tried and convicted on three counts of violating Section 145(b) of the Internal Revenue Code of 1939 by wilfully and knowingly attempting to evade and defeat his income tax for the years 1948, 1949, and 1950. 26 U.S.C. § 145(b).

Appellant first attacks the sufficiency of the indictment, contending that none of the counts charge an offense. The first count [1] charged:

"That on or about the 10th day of January, 1949, in the Western District of Pennsylvania, W. Herbert Hoover, late of Woodbury, Pennsylvania, did wilfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 1948 by signing and tendering to an Internal Revenue Service official at Altoona, Pennsylvania, a false and fraudulent income tax return, wherein said false and fraudulent income tax return he stated that his adjusted gross income for said

---

1. All three counts are identical, except for dates and the amounts involved.

calendar year was the sum of $2,-936.93 and that the amount of tax due and owing thereon was the sum of $140.00; whereas, as he then and there well knew, his net income for the said calendar year was the sum of $23,513.00, upon which said net income he owed to the United States of America an income tax of $7,212.-97, and which return was filed with the Collector of Internal Revenue for the First Internal Revenue Collection District of Pennsylvania.

"In violation of Section 145(b), Internal Revenue Code; 26 U.S.C., Section 145(b)."

The relevant portion of Section 145(b) states:

" * * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall * * * be guilty of a felony * * *."

 The appellant contends that the "signing and tendering" of a false return charged in the indictment does not constitute a violation of Section 145(b). We disagree. Section 145(b) does not contain any limiting specifications as to what conduct will constitute a violation of the section. On the contrary, that which is prohibited is an attempt to evade or defeat taxes *in any manner.* In Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, the Supreme Court had occasion to interpret Section 145(b) and made it clear that Congress did not "define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation." 317 U.S. at page 499, 63 S.Ct. at page 368.

It is true that in Spies, the Court said that the "attempt to evade or defeat" had to be found in some *affirmative* willful action by the taxpayer, but the Court explicitly stated that it was not constricting the scope of the Congressional provision that an "attempt" may be accomplished "in any manner." So long as there exists affirmative and positive conduct coupled with a tax-evasion motive, a Section 145(b) violation exists. 317 U.S. at page 499, 63 S.Ct. at page 368. See United States v. Croessant, 3 Cir., 1949, 178 F.2d 96; United States v. Albanese, 2 Cir., 1955, 224 F.2d 879.

We think that the present indictment contains charges of affirmative actions which are sufficient to constitute a violation of Section 145(b). It states that the defendant signed his name to an income tax return with knowledge that the return did not correctly state his income, and tendered the return to an Internal Revenue Service official at Altoona. That the indictment does not explicitly state whether or not the tender was accepted is immaterial. The tender was a positive, affirmative attempt to evade taxes. We do not see why it should make a difference whether the Internal Revenue Service official accepted or refused the tender. Either would not make the defendant's attempt any the less an attempt.

 Appellant's next contention is that the proof conclusively shows that the prosecution was wrongfully brought in the Western judicial district of Pennsylvania. There is no substance to this contention. The signing and tendering of a false and fraudulent return occurred at Altoona, Pennsylvania, which is in the Western District of Pennsylvania. Thus, the indictment and trial occurred in the same district in which the offense was committed.

It is true that the defendant's returns were filed at Philadelphia, which is in the Eastern District of Pennsylvania, but defendant was not indicted for or convicted of filing a false return. He was indicted for affirmative action, other than filing, namely signing and tendering a false return. The filing is not an essential element of a Section 145(b) violation. United States v. Albanese, 2 Cir., 1955, 224 F.2d 879, 882.

Next the appellant contends that he was improperly limited in his cross examination of government witness Yaskin. Yaskin was a special agent with the Intelligence Division of the Internal Revenue Service who, during the investigation of this case, had interviewed the appellant on three occasions. During these interviews, numerous questions were asked of and answered by appellant. On direct examination, Yaskin testified to some of appellant's answers. These answers tended to impute to appellant knowledge of falsity concerning his income tax returns. On cross examination, the defense sought to elicit from Yaskin additional answers given by appellant during the interviews in an effort to show that Yaskin's direct testimony presented an incomplete and inaccurate picture. Appellant now contends that he was restricted in his attempt to elicit additional answers and that the restriction was improper because "the opponent, against whom a part of an utterance has been put in, may, in his turn, complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." 7 Wigmore, Evidence § 2113 (3d ed. 1940).

The government challenges the applicability of the "partial utterance" rule to the present situation, but there is no need to decide this point because a reading of the transcript shows that appellant was not prejudicially restricted in cross examination.

What occurred was this. Defense counsel during cross examination apparently had in his possession an alleged transcript of testimony taken during one of Yaskin's interviews with appellant. He began asking Yaskin about a question which had been asked the appellant during an interview. In so doing, defense counsel began reading questions and answers from the alleged transcript which had never been identified. The attorney for the government objected,[2] and the objection was sustained.

Immediately thereafter, defense counsel attempted several times to continue his questioning in the same manner and each time he was reminded by the court that the government's objection had been sustained. The court informed defense counsel that he would be permitted to show that Yaskin's direct testimony was inaccurate, but he would not be permitted to "get in statements of the Defendant by reading what he said outside of this Court. * * *" The court said that it did not know whether the admissions of appellant, to which Yaskin testified on direct examination, occurred during an interview.

The court was only prohibiting defense counsel from reading questions and answers from the alleged transcript, under the guise of testing Yaskin's recollection, and from asking about appellant's answers during the interview until it was first shown that those answers related to Yaskin's direct testimony. Both restrictions were certainly proper. What occurred immediately following the district court's discussion with defense counsel makes it clear that proper cross examination was permitted. Defense counsel began to relate his cross examination to the direct examination and was

2. Defense counsel questioning which gave rise to the objection was:
"Q. * * * I am going to read to you the question. Mr. Hoover was asked this question: 'Q. Mr. Hoover, couldn't you have corrected your book figure?' And he replied, 'A. What do you mean?'
"And the next question was, 'Q. Couldn't you have taken out the erroneous entries from the book?' Do you remember how he answered that question?

Well, I will save time, I will read you your answer. A. My answer, sir?
"Q. I will read you Mr. Hoover's answer. The answer he made, he answered as follows; I am reading from the transcript of the testimony, so that the Assistant District Attorney can follow—
"Mr. Paletta: I don't understand your reading the answer. I don't understand what you are asking this witness about. You are reading the answer, has he denied the answer?"

then permitted without objection or interruption to inquire about answers given by appellant during the interview.[3] In the district court's opinion [139 F. Supp. 897], the following was said:

"To begin with, in nineteen instances defendant's counsel was permitted without objection to elicit from the witness Rice self-serving utterances of the defendant. Again in the examination of the witness Johnson, counsel for defendant drew out on eleven occasions evidence of declarations of the same nature apparently made during the course of the various interviews. Following the rulings complained of, counsel in cross examining Yaskin about the interviews, on some nine occasions obtained from the witness testimony of other self-serving declarations of the defendant and completed his examination by asking the witness a question, without interference, in the very form which had been previously curtailed. It is apparent that broad latitude was allowed the defendant in developing fully the interviews whence came the admissions.

"Defendant cannot complain that he was in the broad sense limited in any attempt to impeach the witness or test his testimonial qualifications. The statements of the court * * gave the defendant full license to impeach in any proper manner he desired.

"In short, it appears that the defendant's counsel attempted to read to the jury certain questions and answers from an unidentified transcript[2] under the guise of testing Yaskin's recollection. Although the court refused to permit this, the defendant appears to have achieved his objective. For, during the course of the cross-examination of various government witnesses, many of these same questions and answers were brought out. Viewing the court's ruling in its proper context, the only complaint that the defendant can legitimately have is that he was prevented from using this unidentified transcript precisely when and how he chose. That he was not prejudiced by the court's ruling is further buttressed by the fact that he made no effort to properly iden-

3. Some of the cross examination was:
"Q. Well, you have used the word 're-duced', that Mr. Hoover reduced certain figures; didn't Mr. Hoover tell you what he did was to estimate what he thought he had made was and that is the gist of what he told you? A. That is correct. He told me that he estimated his gross receipts; he estimated his purchases; he estimated his net profit. * * "
"Q. Do you remember that you asked Mr. Hoover whether he knew he made that kind of money in 1948, 1949 and 1950? A. Yes, sir, I—
"Q. What was his reply to you then? A. He was quite surprised, he indicated surprise that he had made—that is, he indicated surprise when he found out as to the amount of net profit that Mr. Rice's audit reflected.
"Q. And didn't he give you an explanation as to why when you asked him why didn't he put down the gross receipts the money coming in as from the book, wasn't his explanation that since he didn't have the disbursements correct he couldn't have it on one side

coming in and not showing on the other side how it went out, is that correct? A. That is right. I asked Mr. Hoover why he didn't use the correct receipts and he said his receipts were correct as reflected by his Mill Record. I asked him, 'Why didn't you use the correct receipts?' Or, 'Why didn't you use the receipts,' on his Return, 'that were reflected by your Mill Records?' And he said that, well, his purchases were incorrect and that he couldn't use his correct receipts because that would throw if [sic] way off."
"Q. Tell me, tell me this, in the year 1950 his books showed a loss but he told you, didn't he, that he knew he had made a gain and that is why he reported a gain, is that correct? A. Yes, sir.
"Q. He also told you that, when he was shown the Net Worth Statement, that he wasn't surprised as to how much money he actually had, didn't he? A. 'That he wasn't surprised'?
"Q. That he was surprised? A. Yes, sir, he indicated he was surprised to find out that he was worth $250,000.00."

tify the transcript for employment in his cross-examination of Yaskin, nor did he make any effort to use the transcript in his case-in-chief. Accordingly, this point must also be decided against the defendant."

"2. In the course of his cross-examination, counsel for the defendant represented that there were *over 460 questions* in this transcript. * * * (Italics in original.)"

We agree with the district court.

 Appellant urges next that the district court erred in refusing to charge the jury concerning the misdemeanor under Section 3616(a) of the Internal Revenue Code, 26 U.S.C. § 3616(a). Appellant contends that the misdemeanor of violating Section 3616(a) [4] is necessarily included in the felony for which he was indicted and convicted under Section 145(b), and he was, therefore, under Rule 31(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., entitled to have the jury charged as to both offenses.

This identical question was raised before the Supreme Court in Berra v. United States, 1956, 351 U.S. 131, 76 S.Ct. 685. As in this case, the sole question raised in Berra was whether it was error to refuse a requested charge concerning § 3616(a), and the Supreme Court held that it was not. Accordingly, we must reject appellant's contention. There is no need to repeat here the discussion contained in the Berra case.

The last point raised is that the evidence was insufficient to sustain the verdict. A careful examination of the record reveals clearly that the evidence justified the jury's verdict.

For the foregoing reasons the judgment of the district court will be affirmed.

4. There is a violation of § 3616(a) when one "delivers or discloses to the collector or deputy any false or fraudulent list, return, account, or statement, with

intent to defeat or evade the valuation, enumeration, or assessment intended to be made * * *." 26 U.S.C. § 3616 (a).