**UNITED STATES of America**

v.

**Jay F. STEELE.**

**Crim. No. 14808.**

United States District Court
W. D. Pennsylvania.

Feb. 6, 1957.

D. Malcolm Anderson, Jr., U. S. Atty., Hubert Teitelbaum, First Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

George F. Taylor, John A. McCann, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

The defendant was found guilty by a jury under Section 145(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 145(b) for willfully and knowingly attempting to evade and defeat a part of his income tax due the United States for the year 1949.

At the close of all the evidence, the defendant made a motion for a judgment of

**516**

acquittal upon which motion judgment was reserved. Subsequently, a motion for a new trial was filed. Both motions will be denied.

The defendant, doing business as a sole proprietor under the fictitious name of Pittsburgh Engineering and Supply Company, owned and operated a steel fabricating plant from 1946 to March 31, 1949. His books and records were kept upon the accrual basis of accounting. On April 1, 1949 he incorporated the business and became the controlling shareholder[1] and principal officer. In his income tax return for 1949, he correctly reported his salary from the corporation. At the trial, the important issue was whether he willfully attempted to evade or defeat his income tax by intentionally understating his income on his 1949 tax return for the period from January 1, 1949 to March 31, 1949. For this period he reported on his return $1675 as "wages", which was $50 less than the amount of money he actually withdrew. The government contends that his net income from his business for this period was at least $12,024.42 (T., p. 146). This figure represents actual sales income less actual expenditures as shown by defendant's books for the period (T., p. 47; Ex. D–3), but does not take into consideration any inventory adjustment or allowance for depreciation.

The defendant contends that the government did not meet its burden of proof in that it failed to prove the correct inventory value as of March 31, 1949. He claims this ending inventory was not valued at cost but was improperly valued at a market value which was higher than cost.

From the evidence it appears that as of December 31, 1948, the defendant's records disclosed an inventory of $17,048.75 (Exhibit B). As of March 31, 1949, the end of the period, he caused a raw material inventory to be prepared which totalled $33,036.61 or an increase of $15,987.86 (Exhibit C). He certified to the latter inventory (Exhibit G). Based on these figures and an undisputed depreciation allowance of $1,696.94 and other minor adjustments, the records of the defendant showed a net income of $31,119.67 for the three-month period ending March 31, 1949.

The government in proving defendant's profit for the three-month period disclaimed reliance on any inventory increase and contented itself with maintaining that the proofs demonstrated conclusively that defendant had at least the same amount of inventory on hand at the end of the period as he had at the beginning of the period, and therefore the $12,024.42 excess of total sales receipts over total expenditures was the minimum amount of net income defendant could have had for the period.

There was testimony that a substantial portion of the ending inventory was valued at a "market price" of $5.10 per hundred pounds of steel (T., pp. 44–47); the defendant testified that he had paid $3.05 to $3.80 per hundred pounds for this steel (T., p. 197). On the other hand, as of March 31, 1949, defendant certified that the ending inventory was "priced at cost or market whichever was lower" (Exhibit G),[2] and there was testimony that certain assets and steel were valued at cost (T., pp. 28, 45, 59, 140–144). Thus, the jury could have found that the ending inventory of $33,036.11 had been valued at a market price which was higher than the cost prices which defendant said he had paid for the steel,

[1]. Sufficient stock in the new corporation having been transferred to the defendant, the capital gain shown was not recognized under § 112(b) (5) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112 (b) (5) (see Testimony, pp. 161, 110, 111).

[2]. The Internal Revenue Regulations provide that the valuation of inventories must conform to the best accounting practice in the trade or business and must clearly reflect income, and that the bases of valuation most commonly used by business concerns and which meet the requirements of the Internal Revenue Code are (1) cost and (2) cost or market whichever is lower.

or it could have found, as the government urged, that this inventory was valued substantially at cost.

But even if the ending inventory were adjusted according to defendant's testimony, it was not demonstrated with any certainty that the resulting figure as of March 31, 1949 was of less value than the opening inventory. Hence we assume, as we must, that the jury found that there was no decrease in the inventory value for the period.

This brings us to the defendant's attack upon the government's contention that the difference between $12,024.42, the excess of sales over expenditures, and $1,675, the income he reported in his return as "wages", was taxable income fraudulently unreported. This attack was summarized in a recapitulation which appears in defendant's brief:

| "Alleged gain as of March 31, 1949 | $12,024.42 |
| Less: Customary depreciation items | 2,145.52 |
| accruals | 9,878.90 |
| "Less: Fuller [sic] and Owens [sic] profit | 4,500.00 |
| | 5,378.90 |
| "Less: Amount reported by Steele on tax return | 1,675.00 |
| | 3,703.90 |
| "Less: Any inventory depreciation | ? " |

The government in its brief assails this recapitulation by asserting that the "customary depreciation items" in the sum of $2,145.52 are "improperly classified by defendant as depreciation items." It points out that "[t]he total includes bad debts of $138.02 which are not allowable", and "neglects to consider expenses claimed of $5,265.61 for materials purchased and $627 for shop supplies which were capital expenditures rather than deductible expenses."

■ Defendant argues that the alleged "profit accruals" which arose out of two loan agreements made in 1946 between defendant and two employees, Fullard and Owings, should be allowed as deductions in determining whether he understated his taxable income. But these "profit accruals" as well as the

Fullard and Owings loans were not recorded in defendant's books nor disclosed to either of his accountants. The agreements purported to require defendant to share a percentage of the profits with the obligees, but no profits were ever paid or accrued on his records until settlements were made with them in 1950. There was evidence that the defendant was disputing his liability under these agreements, and if true, such would not be allowable as deductions in the indictment year.[3]

■ But even if the amount of profits ultimately agreed upon were allowable in the indictment year, nonetheless the jury could have found that the defendant fraudulently failed to report substantial income in his return for the three-month period. It is not essential to support a conviction under § 145(b) that the government prove the exact amount of tax evaded. United States v. Johnson, 1943, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Smith, 3 Cir., 1953, 206 F.2d 905.

To show the fraudulent intent of the defendant, the government proved, inter alia, that the defendant had prepared and filed his income tax returns for the years 1944, 1945, 1946 and 1947, including "Schedule C" in 1946 and 1947 showing the income and expenses of his business. It then proved that he prepared and filed his 1949 return, but failed to fill out "Schedule C", which as demonstrated by his 1946 and 1947 returns he knew was required. Instead, he declared his occupation to be "Mgr.", reported as "wages" the first three months' withdrawals of $1,675 (should have been $1,725) on page one of his 1949 return, and falsely indicated that he was "employed" by "Pittsburgh Engineering". It also proved that he declared on his 1949 return that he had filed a 1948 return in Pittsburgh, Pennsylvania, when in fact with a net income of $18,000, he failed to file a 1948 return. It also showed that he understated his income in prior years

3. Cf. Dixie Pine Products Co. v. Commissioner of Internal Revenue, 1944, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270.

by failing to report certain items of income.

■ We think this evidence was sufficient to establish that this defendant unlawfully filed his 1949 return willfully and with knowledge of its falsity and with intent to evade and defeat the payment of his income tax for 1949. United States v. Hoover, 3 Cir., 1956, 233 F.2d 870; United States v. Croessant, 3 Cir., 1949, 178 F.2d 96.

■ The defendant contends that a new trial should be granted because the court admitted the testimony showing that defendant failed to file an income tax return for the calendar year 1948 and refused to instruct the jury to disregard this testimony. In this connection, it was shown that the defendant had a net income of $18,000 for 1948; that he requested two 60-day extensions in order to file that return; and in the early months of 1949, he filed a declaration of estimated tax of $200 which he paid (T., pp. 90, 96, 98, 112–114).

The government contended at the trial that this evidence was admissible (1) to show "a pattern of his attitude toward the income tax law, as tending to prove his willfulness in underreporting in '49" (T., pp. 7, 15, 90–93, 96), and (2) to contradict the statement contained in his 1949 tax return that he had filed a return in 1948 at Pittsburgh, Pennsylvania (T., p. 8). It urged that Emmich v. United States, 6 Cir., 1924, 298 F. 5, 9, a case considered at the trial (T., pp. 91–92), is authority for the admission of the disputed testimony.

The defendant argued strenuously that the later case of Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L. Ed. 418, distinguished willfulness in failing to file a return under § 145(a), the misdemeanor, from willfulness in attempting to evade and defeat the tax under § 145(b), the felony, and that the disputed testimony was for that reason irrelevant and prejudicial. He also contends that filing a declaration of estimated tax with payment and requesting two granted extensions to file was notice to the government and negatived any intention to evade or defeat the tax because there was no deceit or concealment.

It is the court's opinion that the testimony was admissible. The prosecution was certainly entitled to attack defendant's credibility by contradicting the declaration on his 1949 return that he had filed a 1948 return. The evidence that he failed to file a 1948 return when he had a net income for that year of $18,000 was admissible for this purpose.

Also, we think defendant's failure to file a return for 1948, accompanied by the affirmative acts of declaring and paying an estimated tax of $200 on a net income of $18,000 are facts which tend to throw light on his state of mind when he understated his taxable income on his 1949 return. The mental processes he employed to underestimate the tax for 1948 are similar to those employed in understating his income for 1949; that his explanations for both years were rejected by the jury is of no consequence on the question of admissibility.

Similar facts and like conduct apropos the 1948 tax are admissible to show that the defendant's intent in filing the false 1949 return was not innocent, inadvertent or in good faith. Wigmore on Evidence, 3d ed., Vol. II, §§ 302, 305.

As stated in § 302, Wigmore on Evidence, supra:

"It is not here necessary to look for a general scheme or to discover a united system in all the acts; the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent."

For the same reason, defendant's failure to report items of taxable income in 1944 and 1945 were relevant. Cf. United States v. Cindrich, 3 Cir., 1957, 241 F.2d 54. Moreover, as to this latter testimony, no objections were made to its admission (T., pp. 125, 153, 159, 160), it was not denied, nor was its ad-

mission assigned as grounds for a new trial in the motion.

On the all important question of willfulness, the testimony of prior failure to report income, inter alia, tended to show that defendant's intention in understating his taxable income on his 1949 return was a deliberate and calculated attempt to evade and defeat his lawful tax.

In view of all the facts and circumstances in the case, we think the verdict of guilty was justified and was not contrary to the weight of the evidence.

An order will be entered refusing the motions for judgment of acquittal and in the alternative for a new trial.