## PHILADELPHIA PHOTO-ENGRAVERS' UNION NO. 7, I.P.E.U. OF N.A.

### v.

## PARADE PUBLICATIONS, INC.
### Civ. A. No. 30347.

United States District Court
E. D. Pennsylvania.
Feb. 23, 1962.

Edward Davis, Philadelphia, Pa., for plaintiff.

Harold E. Kohn, Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., for defendant.

LUONGO, District Judge.

Philadelphia Photo-Engravers' Union No. 7, I.P.E.U. of N.A. (hereinafter "Union") brought this action under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a) against Parade Publications, Inc. (hereinafter "Employer") seeking to compel Employer to submit to arbitration Employer's refusal to pay a certain premium rate to Joseph Cleary, a member of Union and an employee of Employer. An answer has been filed. Plaintiff moved for summary judgment. The record con-

sists of the complaint, answer, affidavits in support of and in opposition to the motion for summary judgment, and a stipulation to which is attached the collective bargaining agreement, referred to hereinafter.

From the record it appears that Union is the sole and exclusive bargaining agency for all employees of Employer engaged in the process of rotogravure photo-engraving under a collective bargaining agreement entered into as of February 15, 1960 and in effect at the time of the filing of the complaint. The collective bargaining agreement contains the following pertinent provisions:

"ARTICLE X

"SECTION 1 All questions of difference concerning an interpretation of this Agreement and all questions arising between the Employer and his employees including discharge disputes, which cannot be amicably adjusted in conciliation shall be submitted to an Arbitration Committee. * * * During the time of said arbitration no strike or lockout shall be engaged in by either party to this Agreement. * * *

"The Constitution and Laws of the Philadelphia Photo-Engravers' Union No. 7, I.P.E.U. and the International Photo-Engravers' Union of North America, in effect January 1, 1960, shall not be subject to arbitration.

"SECTION 2 In consideration of the foregoing arrangements for the adjustment of grievances or settlement of disputes, both parties to this agreement accept this procedure as the sole and exclusive method of seeking adjustment or redress, prior to instituting any proceedings in courts of equity or laws, provided both parties fully comply with the aforesaid terms of this Article."

Cleary, who had theretofore been employed in the New York area, was hired by Employer in 1950 as a finisher. His starting wage was considerably higher than the scale for finishers, the difference being "premium rate". Premium rate is not uncommon and is a matter of bargaining between individual employees and Employer. In the succeeding years Cleary received several increases in pay, at least one of which was to compensate him for supervisory duties, an arrangement since terminated. In several collective bargaining agreements between Union and Employer, including the one involved in this suit, Cleary received other pay increases as a result of the general increase to "Those receiving more than the contract minimum. * * *"

On June 20, 1961, Employer unilaterally reduced the amount of Cleary's premium rate. Cleary objected and Union protested to Employer, seeking arbitration of the dispute. Union contends that, notwithstanding that initially the amount of premium rate is a matter for individual bargaining between Employer and employee, it is the practice in this industry that a *reduction* in premium rate is a subject upon which Union, as exclusive bargaining agency for all employees, must be consulted and Union's consent obtained before reduction can lawfully be put into effect. Employer denies the existence of any such custom.

In resisting Union's motion for summary judgment, Employer has made several arguments, its main argument being that the Court may not order arbitration since the parties did not agree specifically that this issue was to be arbitrated. Its argument is that the collective bargaining agreement dealt only with minimum wages, therefore any dispute concerning premium rates, which are not mentioned in the collective bargaining agreement, is not a proper subject matter for arbitration.

In essence, Employer's position is that since the subject matter of premium rate is not *included* in the collective bargaining agreement, the parties did not agree to arbitrate any disputes concerning that subject. That argument flies directly in the face of the decisions of the Court of Appeals for this Circuit which have consistently held, at least since the decisions by the Supreme Court in Unit-

ed Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960) ; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), that where there is a broad arbitration clause and a no-strike provision, unless the parties have specifically *excluded* a subject matter from the arbitration provision, it must be submitted to arbitration. Yale & Towne Manufacturing Company v. Local Lodge 1717, International Association of Machinists, 299 F. 2d 882 (C.A. 3, Docket No. 13,654, February 14, 1962) and cases therein cited in footnote 4.

Employer has not called the attention of the Court to any provision in the agreement specifically excluding this type of dispute from arbitration. The parties knew how to exclude a subject from arbitration. They did so as to the "Constitution and Laws" of the Union in the last paragraph of Article X, Section 1.

 There can be no doubt that the arbitration clause in the instant agreement is broad enough to include the subject matter of premium rate. By Article X the parties not only committed to arbitration all questions of interpretation of the agreement, they also committed all questions arising between Employer and his employees which could not be amicably adjusted in conciliation. The reduction of Cleary's premium rate, to which he objected, is a question "arising between the Employer and (one of) his employees". The clause is certainly broad enough to cover the "question". The agreement contains a no-strike provision. Under these circumstances the function of the Court is narrow, being confined to determining whether the party seeking arbitration is making a claim which on its face is governed by the agreement. International Telephone and Telegraph Corporation v. Local 400, Professional, Technical and Salaried Div., International Union of Electrical, Radio and Machine Workers, 286 F.2d 329 (3rd Cir. 1960). The record here discloses such a claim. Once that has been established, at the very least the matter must be submitted to arbitration for an interpretation of the agreement.

Employer has also argued that this matter is not appropriate for entry of summary judgment because there are disputed fact issues present. That argument is answered by the following quotation from Chief Judge Biggs' opinion in Harris Structural Steel Company, Inc. v. United Steelworkers of America, 298 F. 2d 363, 364–365 (3rd Cir. 1962), a case involving a dispute over payment of Christmas bonuses:

"* * * The Company asserts that uncontroverted evidence demonstrates that the parties to the collective bargaining agreement did not intend to include the subject matter of a grievance such as this within the agreement and hence within the provision for arbitration. We have examined the record carefully. Allegations of the affidavits filed on behalf of the Company are contradicted by an affidavit filed by a staff representative of the International. The extensive documentary evidence offered by the Company is not decisive. Were it not for the state of the law we would say that the case was not one which could be disposed of properly on motion for summary judgment but we think that the law in this case is so plain as to permit no alternative.

"Five points are very clear: first, the Company recognizes the Union as the exclusive representative of the employees in the bargaining unit in respect to rates of pay and wages; second, the issue of bonus payments is not specifically excluded from the grievance provisions of the collective bargaining agreement; third, the grievance and arbitration article of the agreement expressly includes any question relating to wages, in addition to 'differences * * * as to the meaning and application of the

provisions of this agreement'; fourth, the sums granted, whether given or paid, to the employees at or near the Christmas season, were estimated in terms of wages; and, fifth, the agreement contains a no-strike provision."

Finally Employer urges this Court to withhold decision until Sinclair Refining Company v. Atkinson, 290 F.2d 312 (7th Cir., 1961) and Drake Bakeries, Inc. v. Local 50 American Bakery and Confectionary Workers International AFL–CIO, 294 F.2d 399 (2nd Cir. 1961) on which certiorari has been granted, have been decided by the Supreme Court. 82 S.Ct. 480. This we cannot do. The Court of Appeals for this Circuit has ruled often and in unmistakable terms on this subject. Our duty is clear.

Plaintiff's motion for summary judgment will be granted.