**UNITED STATES STEEL CORPO-RATION, Plaintiff,**

v.

**UNITED MINE WORKERS OF AMER-ICA et al., Defendants (two cases).**

**Civ. A. Nos. 75-200, 75-235.**

United States District Court,
W. D. Pennsylvania.

March 13, 1975.

Leonard Scheinholtz, Pittsburgh, Pa., for United States Steel Corp.

Kenneth J. Yablonski, Washington, Pa., and Nick C. King, Pittsburgh, Pa., for United Mine Workers of America.

## OPINION

ROSENBERG, District Judge.

The plaintiff, United States Steel Corporation, operates Maple Creek No. 1 and No. 2 mines in Washington County within the Western District of Pennsylvania. The labor relations are fixed between the defendants the International Union, United Mine Workers of America, the District Union, District No. 5, and the Local Union No. 1248 by an Agreement dated December 6, 1974 to December 6, 1977. It is from the Local Union No. 1248 that the Maple Creek mine complex draws its employees.

Coal extracted from these mines is classified as bituminous high volatile metallurgical coal known by the term "Pittsburgh Seam" having certain high quality properties necessary in the production of coke at the plaintiff's Clairton coke works. From there this coke is distributed throughout the Monongahela River Valley to the plaintiff's steel manufacturing mills.

On February 12, 1975, commencing with the midnight shift, 12:01 a. m., the employees demonstrated a collective and concerted refusal to go to work over a dispute with the plaintiff involving a demand to have a permanent, as opposed to a roving, security guard placed at the employee parking lots of both mines. This dispute was precipitated by a theft of an employee's truck from one of the parking lots on the prior day. Later that same day at 3:33 p. m., I issued a temporary restraining order (Civil Action No. 75–200) directing the local union defendant to cease the work stoppage and

return to work at the plaintiff's mines and to exercise all rights for settlement of the dispute in accordance with the Agreement. Proof of service was filed and it shows that the defendant Local 1248 was properly served on February 13, 1975 at 10:33 a. m. The defendant Local did not return to work until February 14th, after I issued a civil contempt citation, holding it in abeyance if the Local purged itself of contempt by going to work forthwith. Some men of the Local finally returned to work on February 14th on the 4:00 p. m. shift.

On February 24th, the employees of the Maple Creek preparation plant, which cleans and prepares coal for distribution, demonstrated a collective and concerted refusal to work on the 12:01 a. m. shift over a dispute which dealt with the members of the Local working along side a fellow union worker who had worked at the mine during the December 1974 work stoppage. Because the preparation plant had closed down for that shift, it became impossible for both Maple Creek No. 1 and No. 2 mines to operate on the following 8:00 a. m. shift. The mining of coal at Maple Creek is one continuous process and once there is a breakdown in one link of the process, the other links, particularly those that mine the coal, are adversely affected. Work resumed at both mines on February 24th on the 4:00 p. m. shift when the preparation plant resumed work.

On February 25th, the employees working at Maple Creek No. 1 mine, on the 12:01 a. m. shift, again refused to go to work because of a dispute over a job assignment. While the employees at the preparation plant and Maple Creek mine No. 2 did work that shift, they subsequently walked off the job on the 8:00 a. m. shift on the same day.

On February 24th, at 3:08 p. m., I issued another temporary restraining order (Civil Action No. 75–235) which directed the defendant to cease work stoppages and resort to the grievance procedure of the Agreement. Proof of service was filed and it shows that the defendant Local was properly served on February 25th at 10:40 a. m. The membership finally returned to work pursuant to this Order.

The issues presented can only be determined through the power given me by Congress as enacted under the provisions of § 301 of the Labor-Management Relations Act of 1947, as amended. My function is to determine the rights of the parties involved under their contract of management and employment. General Warehousemen & Emp. Union No. 636 v. American Hardware Supply Co., 329 F.2d 789, C.A. 3, 1964, cert. den. 379 U.S. 829, 85 S.Ct. 57, 13 L.Ed.2d 37; Local 368, United Federation of Engineers, International Union of Electric Radio & Machine Workers, AFL–CIO v. Western Electric, Inc., 359 F.Supp. 651 (D.C.N.J., 1973); Philadelphia Photo-Engraver's Union No. 7, I. P. E. U. of N. A. v. Parade Publications, Inc., 202 F.Supp. 685 (D.C.Pa.1962).

Here the plaintiff and the defendants, as I stated, are controlled in their working relationships by the National Bituminous Coal Wage Agreement of December 6, 1974. Therein it is provided, inter alia, that the parties use grievance and arbitration procedures to ensure continued production and peaceful settlement of disputes. Article XXVII of the Agreement provides for an exclusive remedy for resolving disputes between management and the union which states:

"The United Mine Workers of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the 'Settlement of Disputes' Article of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all

such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts.

The Employer, however, expressly authorizes the Union to seek judicial relief, without exhausting the grievance machinery, in cases involving successorship."

The Agreement as a whole concerns itself directly with three processes for a grievant: (1) health and safety procedure of Article III, § p; (2) general grievance and disputes procedure of Article XXIII; and (3) the employee discharge procedure of Article XXIV.

As relates to the general disputes, Article XXIII includes five steps which lead to a final determination by which the parties are to be bound. At the first step, the employee merely makes a complaint to his own foreman. If not settled there, the second step requires the grievant to complain to the Mine Committee which meets with management within seven working days and there it is reduced to a writing on a grievance form. Step three is invoked if there still is no satisfaction and within the next seven days the grievance must be referred to the designated District Representative who meets with a representative of management. If no settlement is had at this level then step four is invoked requiring the grievance, within ten calendar days, to be referred to a special arbitration panel. Step five thereafter permits an appeal to an Arbitration Appeal Board. It is, therefore, obvious that the subscribers to the Agreement, whether management or union, must conform with the grievance process for a final determination of the disputes.

█ The settlement of the grievances, no matter what they are, remains exclusively and finally within the functioning of both management and labor in accordance with the Agreement. Thus, it is that a dispute of whether or not a parking lot needs more protection or whether or not membership might venture to work alongside another member of the union who had disregarded a previous work stoppage, are matters in which the word "dispute" is predominately an observable fact. As such these come within the provisions of the 1974 Agreement and are subject to the grievance and arbitration procedure.

█ By reason of the structure of the Agreement and the provisions contained therein, it is obvious that it was within the contemplation of the parties during their collective bargaining sessions, that there be no work stoppages because of any disputes or grievances between management and labor (Island Creek Coal Company v. United Mine Workers of America, District 2, et al., 507 F.2d 650, 653, C.A. 3, 1975); that while continuing their work they proceed in whatever way the Agreement provides; and that they have the necessary machinery to bring about determinations of any disputes or grievances.

██ I can clearly state here that it must be incumbent upon all those entering into labor agreements to abide by their undertaking and obligations required therein. An abandonment by either labor or management can do nothing else but cause strife in the midst of an economy that at best is in a recession. It has already been mandated that industrial peace requires a prompt resolution of labor-management disputes. Gateway Coal Company v. United Mine Workers, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Here the plaintiff and the defendants have entered into a contractual relationship which binds them to their self-created remedy for disputes and grievances. This remedy must be pursued, and work stoppages must be avoided over arbitrable disputes. Island

Creek Coal Company, *supra*, 507 F.2d at page 652.

The principal complaint of the plaintiff is against the membership in the local union. The plaintiff complains incidentally against the District and the International because they failed to force the local union members to perform in accordance with the Agreement, or failed otherwise to impose sanctions upon the local union members as the plaintiff contends both the District and the International were bound to do. It may be that this is so and may very well be proven at the final hearing of this case. The evidence presented before me up until now relates only to the procurement of a preliminary injunction to compel members of Local 1248 to continue their employment in the mine in spite of any grievances or complaints which are susceptible to the grievance machinery.

■ The defendants argue that the International and the District are not liable for the work stoppages of its Local. Lewis v. Benedict Coal Corporation, 259 F.2d 346, C.A. 6, 1958; United Construction Workers v. Haislip Baking Company, 233 F.2d 872, C.A. 4, 1955, cert. den. 350 U.S. 847, 76 S.Ct. 87, 100 L.Ed. 754; Garmeada Coal Company v. International Union, United Mine Workers of America, 230 F.2d 945, C.A. 6, 1956. However, this is a misplaced argument, for the above cited cases refer to actions brought in law for damages for breach of contract. Here, the plaintiff is praying for equitable relief and there is abundant authority to support its prayer for injunctive relief against the District and the International. Gateway Coal Company v. United Mine Workers et al., 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); Armco Steel Corporation et al. v. United Mine Workers of America, et al., 505 F.2d 1129, C.A. 4, 1974; Island Creek Coal Company v. United Mine Workers et al., *supra;* United States Steel Corporation et al. v. United Mine Workers of America, et al., Civil Actions Nos. 74–1174, 74–1175, 74–1176, 74–1177, 74–1199 (W.D.Pa., 1974).

■ Because I have found as a fact that work stoppages produced irreparable harm to the plaintiff and that potential work stoppages based upon past grievances or complaints can very well in the future produce further irrevocable harm, the plaintiff is entitled to a preliminary injunction for the purpose of maintaining the status quo between the parties.

As of now it appears likely that the plaintiff will be successful after a final hearing; but that is not certain, and the parties will be permitted to exhaust whatever discovery they require for the purpose of having a full and complete hearing for a final determination of the questions raised. In the meantime a preliminary injunction will issue to the plaintiff commanding and enjoining the defendants to continue at their employment without work stoppages, and in the interim, pending the final determination of this case, where necessary, to pursue the remedies provided in the Agreement.

Counsel for the plaintiff argues in his memorandum for the granting of a prospective injunction for the remainder of the 1974 National Bituminous Wage Agreement. Inasmuch as I am considering the issuance of a preliminary injunction only at the present time, such a broad injunction may be appropriate after final hearing, but it is not presently in order and the preliminary injunction will be issued only, pending a final determination after the parties have had a complete and full hearing.

## PRELIMINARY INJUNCTION

And now, to-wit, this 13th day of March 1975, after hearing, it appearing to the court from the evidence presented that the defendants and their members employed by the plaintiff at its Maple Creek Mine in Washington County, Pennsylvania, have engaged in repeated illegal work stoppages; that the disputes giving rise to these illegal work

stoppages are subject to resolution under the Settlement of Disputes procedure of the collective bargaining agreement between the parties, which is intended to prevent interruptions of operations such as are involved herein; that the plaintiff will suffer irreparable harm and injury if work stoppages are permitted to continue; that greater harm will result to the plaintiff from the denial of injunctive relief than would result to the defendants from the grant thereof; and there is a substantial likelihood that the plaintiff will finally prevail on the merits;

It is, therefore, ordered, adjudged and decreed:

1. That a Preliminary Injunction is hereby issued enjoining the defendants, United Mine Workers of America, District 5, United Mine Workers of America, and Local 1248, United Mine Workers of America, their officers, representatives, members, and all persons acting in concert with them, or in their behalf, during the pendency of this preliminary injunction and until final determination from

(a) Engaging in a strike or work stoppage at the plaintiff's Maple Creek Mine located in Washington County, Pennsylvania; or

(b) Picketing or in any other manner interferring with operations at the plaintiff's Maple Creek Mine located in Washington County, Pennsylvania,

because of any difference concerning the meaning and application of the provisions of the Agreement or any difference about matters not specifically mentioned in the Agreement or because of any local trouble of any kind arising at the mine.

2. It is further ordered that the defendants, their officers, representatives and members are hereby directed to utilize the Settlement of Disputes procedure of the 1974 Bituminous Coal Wage Agreement for the resolution of the following disputes:

(a) The dispute as to whether the plaintiff is required to furnish security guards from dusk to dawn at the employee parking lots at the Maple Creek Mine;

(b) The dispute as to whether the employees at the Maple Creek Preparation Plant have the right to refuse to work with Richard Beranek, a bargaining unit employee, because he worked on December 17 and 18, 1974, during an earlier illegal work stoppage at the Maple Creek Mine; and

(c) The seniority dispute involving the filling of a temporary vacancy at Maple Creek Mine #1 in the job of slate motorman,

including arbitration, if necessary.

3. It is further ordered that during the pendency of this preliminary injunction and pending final determination, the defendants, their officers, representatives and members utilize the Settlement of Disputes procedure for the resolution of any further ". . . differences . . . between the Mine Workers and the Employer as to the meaning and application of the provisions of [said] agreement . . ." and ". . . differences . . . about matters specifically mentioned in [said] agreement . . ." and ". . . any local trouble of any kind [arising] at the mine . . ." including if necessary, final and binding arbitration.

4. It is further ordered that the defendants' officers, and representatives, pending final determination of this case, take all action which may be necessary to assure compliance with the terms of the 1974 Bituminous Coal Wage Agreement, during pendency of this preliminary injunction.

This court retains jurisdiction of the issues involved in this case and any violation of this court's Order shall be reported immediately to the court for appropriate action.

Bond in the amount of $5,000 by the plaintiff shall first be approved by the court.

Copies of this Order may be served by attorneys for the plaintiff or their representatives.